UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Rostislav Grigorenko,

Petitioner,

**MEMORANDUM & ORDER**
26-CV-04772 (DG)

-against-

Raul Maldonado Jr., *et al.*,

Respondents.
---------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

Pending before the Court is the "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241" ("the Petition") filed by Petitioner Rostislav Grigorenko. *See* Petition ("Pet."), ECF No. 1; Exhibits to Petition, ECF Nos. 1-1 through 1-7; *see also* Petitioner's Reply Brief, ECF No. 8; Petitioner's Supplemental Brief, ECF No. 11; Petitioner's Notice of Authority, ECF No. 13; Petitioner's September 15, 2026 Letter, ECF No. 14; Petitioner's September 28, 2026 Letter, ECF No. 16. The Petition stems from Petitioner's July 15, 2026 arrest by U.S. Immigration and Customs Enforcement ("ICE") at LaGuardia Airport and his resulting detention and is brought in two Counts.[1] Petitioner challenges the lawfulness of his detention and seeks immediate release. *See* Pet. at 16 (Prayer for Relief).[2] Petitioner principally asserts that he is entitled to such release (1) because he was not issued a Notice to Appear until after – albeit on the same day as – his arrest, in violation of 8 C.F.R. § 1236.1(b)(1); (2) because the initial custody determination took place after – albeit on the same day as – his arrest; and (3) because the initial custody

[1] Count One is styled "Arrest and Detention in Violation of the Fourth Amendment, the INA, and Applicable Regulations" and Count Two is styled "Arrest and Detention in Violation of the Due Process Clause."

[2] Petitioner also seeks a variety of additional and/or alternative relief, including an award of attorney's fees and costs.

determination was not individualized.

Respondents oppose the Petition. *See* Respondents' August 11, 2026 Letter, ECF No. 5; Appendix to Respondents' August 11, 2026 Letter, ECF No. 5-1; Declaration of Supervisory Detention and Deportation Officer Nelson Mercado ("Mercado Declaration"), ECF No. 5-2; Exhibits to Mercado Declaration, ECF Nos. 5-3 through 5-8; Respondents' August 21, 2026 Letter, ECF No. 9; Respondents' September 3, 2026 Letter, ECF No. 12; Supplemental Declaration of Nelson Mercado, ECF No. 12-1; Respondents' September 23, 2026 Letter, ECF No. 15. In opposing the Petition, Respondents assert that Petitioner has been lawfully detained pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)") and assert that there was no defect in any of the processes by which Petitioner was arrested and processed and that even if a regulatory violation occurred, release is not the appropriate remedy.[3]

For the reasons set forth below, the Petition is denied.

## RELEVANT FACTUAL BACKGROUND[4]

Petitioner is a citizen of Russia. On July 3, 2015, Petitioner was admitted to the United States on a B-2 nonimmigrant visa with authorization to remain in the United States for a temporary period not to extend past January 2, 2016. Petitioner remained in the United States beyond that date.

On December 16, 2022, Petitioner filed an application with U.S. Citizenship and Immigration Services for relief from removal from the United States.

---

[3] Familiarity with the entirety of the record in this action is assumed herein.

[4] The information set forth in this section is drawn from the parties' filings – including the declarations – and representations made at the August 24, 2026 hearing held before the undersigned and is uncontested unless otherwise indicated. The Court sets forth in this section only those facts of particular relevance to the Court's decision herein but notes that the Court has considered all of the filings and all of the facts in the record before the Court.

On or about July 14, 2026, the Transportation Security Administration informed ICE that Petitioner was scheduled to fly from New York to Florida on July 15, 2026. ICE ran database checks on Petitioner, confirmed that Petitioner had overstayed his B-2 nonimmigrant visa and was illegally present in the United States, and issued a Form I-200, Warrant for Arrest of Alien (the "I-200"). The I-200 was signed by Supervisory Detention and Deportation Officer Nelson Mercado on July 15, 2026 prior to ICE officers encountering Petitioner. The I-200 sets forth that Officer Mercado determined that there was probable cause to believe that Petitioner is removable from the United States.

At approximately 2:00 p.m. on July 15, 2026, ICE officers observed Petitioner inside LaGuardia Airport and, after confirming Petitioner's identity, arrested Petitioner. Respondents assert that the ICE officers who approached Petitioner at LaGuardia Airport were wearing visible "ICE" badges and identified themselves as ICE officers and that Petitioner was informed that he was being arrested pursuant to the I-200 and was given the opportunity to read an electronic copy of the I-200 and was then detained and transported to 26 Federal Plaza for processing. Petitioner disputes that the ICE officers displayed badges. Petitioner acknowledges that "a photograph of a handwritten form bearing his name and the date July 15, 2026" was displayed on a cell phone but asserts that he was not given "an opportunity to read or review the document."

During the processing on July 15, 2026, Petitioner was personally served with the I-200 as well as a Form I-862, Notice to Appear (the "NTA"), charging him with removability, as an alien admitted to the United States but removable for remaining in the United States for a time longer than permitted. The NTA reflects that Officer Mercado signed the NTA (digitally) at 8:25 p.m. on July 15, 2026. The NTA was filed with the Executive Office for Immigration Review

("EOIR") on July 15, 2026.[5]

Also during the processing on July 15, 2026, ICE conducted an initial custody determination pursuant to Section 1226(a), which was documented on a Form I-286.[6] As part of the custody determination process, Petitioner was fingerprinted and interviewed. The *Velesaca* worksheet completed as part of the initial custody determination initially reflected that Petitioner had established that he does not pose a flight risk. However, Officer Mercado has declared – under penalty of perjury – that he mistakenly indicated on the worksheet that Petitioner had established that he did not pose a flight risk when in fact Petitioner did not so establish. On August 6, 2026 – the day after the instant Petition was filed – Officer Mercado revised the *Velesaca* worksheet to reflect that Petitioner had not established that he did not pose a flight risk.

On July 16, 2026, Petitioner was transferred to a detention facility in New Jersey. On July 21, 2026, Petitioner filed a request for a custody redetermination and EOIR then scheduled a bond hearing for July 23, 2026. On July 23, 2026, Petitioner was transferred to the Metropolitan Detention Center in Brooklyn, New York, where he remained detained on the date that he filed the Petition. On July 27, 2026, Petitioner filed another custody redetermination request and on July 29, 2026, EOIR scheduled a bond hearing for August 5, 2026.

On August 5, 2026, Petitioner, represented by counsel, appeared for a bond hearing. The Immigration Judge found that Petitioner failed to meet his burden to demonstrate that he is not a flight risk and bond was denied. Any appeal to the Board of Immigration Appeals ("BIA") was

---

[5] Officer Mercado has declared that during processing, an officer mistakenly entered in an ICE database that Petitioner was arrested at John F. Kennedy Airport when he was in fact arrested at LaGuardia Airport.

[6] Respondents' reference to July 20, 2026 in a footnote in Respondents' September 3, 2026 letter, ECF No. 12, appears to reflect a typographical error. The date of the processing and initial custody determination – July 15, 2026 – does not appear to be disputed.

due by September 4, 2026. Notably, in his filings in the instant action that post-date September 4, 2026, *see* ECF Nos. 14, 16, Petitioner does not indicate that he filed an appeal to BIA.[7]

**STANDARD OF REVIEW**

As the United States Court of Appeals for the Second Circuit has recognized, Title 28, United States Code, Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *See Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

The Second Circuit has noted that the Due Process Clause of the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). In addition, the Second Circuit has noted that "[n]oncitizens are also entitled to challenge through habeas corpus" the legality of their detention. *See id.* And the Second Circuit has applied the three-factor balancing test as provided in *Mathews v. Eldridge*, 424 U.S. 319 (1976) in determining the adequacy of process in the context of civil immigration confinement. *See Velasco Lopez*, 978 F.3d at 851 (noting that the three *Mathews* factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" (quoting *Mathews*, 424 U.S. at 335)).

---

7 Respondents do not appear to expressly address the issue of administrative exhaustion and the Court's decision herein is not premised on any arguable failure to exhaust.

**DISCUSSION**

The record here reflects that Petitioner was arrested pursuant to a warrant issued prior to his arrest; that Petitioner was served with the warrant and with the NTA during post-arrest processing on the same day as the arrest; that ICE made an individualized custody determination at the time of the post-arrest processing on the same day as the arrest; and that Petitioner received a custody redetermination hearing before an immigration judge and was afforded the opportunity to appeal the unfavorable redetermination decision. The record also reflects that Petitioner has not demonstrated any prejudice from the alleged regulatory violation with respect to the timing of the NTA and has not persuasively argued that the regulation at issue is a regulation promulgated to protect a fundamental right derived from the Constitution or a federal statute. Under these circumstances, Petitioner is not entitled to release.

* * *

As an initial matter, the Court notes that the instant action is one of the many actions in which federal district courts across the country have in recent months been called upon to address the procedures by which individuals are detained by ICE. The Court finds particularly instructive here the decision of the district court in *Gagea v. Maldonado*, No. 26-CV-04817, 2026 WL 2859032 (E.D.N.Y. Sept. 23, 2026) (immigration habeas case in which a Notice to Appear, which was generated approximately four hours after petitioner's arrest, was served on petitioner during post-arrest processing and, roughly contemporaneously, ICE made an initial determination to detain petitioner pursuant to Section 1226(a)); the decision of the district court in *Loja Loja v. Acting Field Office Director*, No. 26-CV-05368, 2026 WL 2321934 (S.D.N.Y. Aug. 10, 2026) (immigration habeas case in which a Notice to Appear was issued and served on petitioner during post-arrest processing, on same day as arrest, and an initial custody determination was made during same post-arrest processing); and the decision of the district

court in *Ramirez v. Genalo*, No. 26-CV-03229, 2026 WL 1815771 (E.D.N.Y. June 24, 2026) (immigration habeas case in which a Notice to Appear was served on petitioner at the time he was processed in connection with his arrest).

Here, as in *Gagea* and *Loja Loja*, the Court concludes that an individualized custody determination that takes place on the same day as, but hours after, an arrest does not necessarily run afoul of Section 1226(a).[8] The Court incorporates by reference herein the reasoning of the *Gagea* and *Loja Loja* courts in this regard. *See Gagea*, 2026 WL 2859032, at *3-4 (quoting from and discussing Section 1226(a), citing *Velasco Lopez*, 978 F.3d at 849, and concluding that "petitioner has not identified any statutory defect in the custody determination's timing"); *Loja Loja*, 2026 WL 2321934, at *5-6 (discussing Section 1226(a) and 8 C.F.R. § 236.1(c)(8), noting that "neither the regulation nor the statute speaks to when DHS must conduct an individualized custody determination," referencing *Velesaca* settlement in support of conclusion that the regulation does not include a stricter temporal restriction than the 48-hours incorporated in the settlement, and discussing *Mathews* factors). Here, the timing of the initial custody determination does not provide a basis for the relief Petitioner seeks.

---

[8] 8 U.S.C. § 1226(a) provides in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General –
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole; . . . .

Petitioner's additional attacks on the initial custody determination – *i.e.*, that such determination was not in fact "individualized" and was instead predetermined and based solely on Petitioner's status and a "blanket policy of detaining noncitizens without lawful immigration status" – fare no better under the circumstances here. Here, the record reflects that Petitioner did obtain an individualized custody determination. It bears noting that the Court does not conclude on the record before the Court that the correction of the *Velesaca* worksheet reflects – as Petitioner suggests – that ICE engaged in an impermissible *post hoc* rationalization that deprived Petitioner of meaningful individualized process. As noted above, Officer Mercado has indicated under penalty of perjury that the determination regarding flight was made on July 15, 2026 in connection with the individualized custody determination process.[9]

As to the NTA, the Court notes at the outset that the Court need not conclusively determine whether the applicable regulation was violated by virtue of the timing of the NTA because whether or not the regulation was violated does not alter the Court's conclusion that Petitioner is not entitled to the relief he seeks on the basis of the timing of the NTA. Even assuming – without deciding – that the applicable regulation was violated, any such violation does not provide a basis for the relief Petitioner seeks under the circumstances here. Here, as in *Gagea* and *Loja Loja*, Petitioner has not demonstrated that the regulatory provision at issue was

[9] To the extent that certain of Petitioner's arguments (*e.g.*, regarding the assessment of Petitioner's family ties) can be read to invite the Court to second guess the discretionary determination of ICE to detain Petitioner on July 15, 2026, the Court declines the invitation. *See* 8 U.S.C. § 1226(e); *see also, e.g.*, *Chen v. Maldonado*, No. 26-CV-04773, 2026 WL 2455274, at *4-5 (E.D.N.Y. Aug. 21, 2026).

To the extent that Petitioner seeks relief with respect to the denial of bond by the Immigration Judge on August 5, 2026, the Court again notes that Petitioner was afforded the opportunity to appeal the denial. Moreover, Petitioner's argument that he was entitled to a bond hearing at which Respondents – rather than he – bore the burden lacks merit here. *See, e.g.*, *Romero-Arriaza v. Maldonado*, No. 26-CV-03488, 2026 WL 2332831, at *3 (E.D.N.Y. Aug. 5, 2026).

promulgated to protect a fundamental right derived from the Constitution or a federal statute and therefore has not demonstrated that relief is appropriate absent a showing of prejudice and the Court further concludes that Petitioner has not demonstrated any prejudice entitling him to relief. The Court incorporates by reference herein the reasoning of the *Gagea* and *Loja Loja* courts in this regard. *See Gagea*, 2026 WL 2859032, at *2-3 (noting absence of sequencing requirement in Section 1226(a) itself, discussing 8 C.F.R. § 1236.1(b)(1), quoting and discussing *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993), and discussing absence of showing of prejudice, noting that the petitioner "does not explain why he would be better off had the NTA been issued a few hours earlier"); *Loja Loja*, 2026 WL 2321934, at *3-4, *6 (discussing 8 C.F.R. § 236.1(b)(1), discussing *Waldron*, discussing absence of showing of prejudice, noting that petitioner failed to make a showing that "he suffered some harm that he would not have suffered had the NTA issued before ICE arrested him" and highlighting that "the temporal gap was at most several hours," and discussing *Mathews* factors); *Waldron*, 17 F.3d at 518; *see also Ramirez*, 2026 WL 1815771, at *4 (discussing applicable regulation and concluding that because Notice to Appear was served on petitioner at the time he was processed in connection with his arrest, there was no defect in the process).[10]

Here, the NTA issued within hours of Petitioner's arrest and was served on Petitioner and filed with EOIR on the day of the arrest and Petitioner does not explain how he would have been

---

[10] The court in *Gagea* referenced 8 C.F.R. § 1236.1(b)(1) – as does the Petition – rather than 8 C.F.R. § 236.1(b)(1). The Court here references 8 C.F.R. § 236.1(b)(1) – as did the *Loja Loja* and *Ramirez* courts (and as does Petitioner in the Reply Brief) – but notes that as relevant here, the regulatory provisions are identical. Each provides in relevant part:

> At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest.

better off had the NTA issued earlier the same day – nor does the record otherwise reflect any prejudice to Petitioner.[11]

* * *

In sum, on the record here, the Court cannot conclude that Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3).

## CONCLUSION

For the reasons set forth above, the Petition, ECF No. 1, is DENIED.[12]

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: October 20, 2026
Brooklyn, New York

[11] Having considered the three-factor balancing test as provided in *Mathews*, the Court concludes that Petitioner has not established any violation of his due process rights. Here, the first *Mathews* factor weighs in Petitioner's favor – indeed, Petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment," *see Velasco Lopez*, 978 F.3d at 851, but the second and third *Mathews* factors weigh against Petitioner – the risk of erroneous deprivation of Petitioner's liberty interest is low and Respondents have a weighty interest in the efficient administration of the immigration laws – and the Court concludes that the first factor does not outweigh the second and third factors. Petitioner's due process arguments – as to the timing of the individualized custody determination and as to the timing of the NTA – are unpersuasive under the circumstances here.

The Court has considered all of the relief requested by Petitioner in the Petition and has determined that none is warranted in light of the circumstances here, the applicable law, and the Court's decision herein with respect to the request for release.

[12] In light of the denial of the Petition, the motion filed at ECF No. 2 – which relies largely on the same arguments advanced by Petitioner in the Petition and principally seeks immediate release – is denied.